IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 04-52 Erie |
| ) | |
| YAKEEN ROGERS ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW, comes the defendant, Yakeen Rogers, by his attorney, Thomas W. Patton, Assistant Federal Public Defender, and respectfully files his Position With Respect To Sentencing Factors. In support thereof, counsel states:

Mr. Rogers respectfully submits that a downward departure from the career offender as that guideline enhancement significantly overstating the seriousness of Mr. Rogers' criminal history. United States Sentencing Guidelines, § 4A1.3; United States v. Shoupe, 988 F.2d 440 (3d Cir. 1993) (Shoupe II); United States v. Shoupe, 35 F.3d 835 (3d Cir. 1994)(Shoupe III).

The sentencing guidelines permit the Court to depart downward when the Court concludes that "a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit future crimes." U.S.S.G., § 4A1.3. In Shoupe II, the Third Circuit quoted with approval from United States v. Adkins, 937 F.2d 947, 952 (4th Cir. 1991), in which the Court stated that:

> "Criminal history" is, relatively, one of the most flexible concepts in the guidelines. While it is possible to classify the severity of current federal offenses within a reasonable degree of precision, mathematically accurate evaluation of the countless permutations of criminal history, involving offenses high and petty committed in numerous jurisdictions, would be at best unwieldy. The Sentencing Commission recognized this difficulty, and though it prescribed a mathematical method to calculate criminal history, it specifically identified overstatement or understatement of the seriousness of the defendant's past conduct as a ground for departure from the raw criminal history score.

Additionally, in United States v. Shoupe, 35 F.3d 835 (3d Cir. 1994)(Shoupe III), the Third Circuit held that the Court may depart downward both to a lower criminal history level and to a lower offense level on the basis that the defendant's Career Offender sentencing range over-represents his criminal history. Accord United States v. Lindia, 82 F.3d 1154, 1165 (1st Cir. 1996); United States v. Reyes, 8 F.3d 1379, 1383-87 (9th Cir. 1993); United States v. Brown, 985 F.2d 478, 482 (9th Cir. 1993)(holding that a downward departure for a career offender is permitted where the defendant's past is significantly less serious than that of a typical career offender); United States v. Beckham, 968 F.2d 47, 54-55 (D.C. Cir. 1992); United States v. Adkins, 937 F.2d 947, 952 (4th Cir. 1991); United States v. Bowser, 941 F.2d 1019, 1024-25 (10th Cir. 1991)(Court affirmed the District Court's decision to sentence the defendant within the range that would have applied absent the application of the career offender guideline); United States v. Senior, 935 F.2d 149, 151 (8th Cir. 1991)(affirming District Court's decision to sentence defendant at the guideline range that would apply absent to the Career Offender provision); United States v. Smith, 909 F.2d 1164, 1169-70 (8th Cir. 1990), cert denied, 498 U.S. 1032 (1991); United States v. Brown, 903 F.2d 540, 545 (8th Cir. 1990)(Court found that the Sentencing Guidelines permit a downward departure based on overstatement of criminal history for career offenders).[1]

In particular, federal courts have held that the fact that the offenses are old, relatively "small time," and/or the defendant received relatively short sentences for his previous offenses are factors that the Court may consider in deciding whether to depart downward. Shoupe II, 988 F.2d at 446

---

[1] United States Sentencing Guidelines, § 4A1.3 was amended effective October 27, 2003 to limit downward departures for overstatement of criminal history category for career offenders to one criminal history category. To the extent Mr. Rogers is asking the Court to depart both with regard to criminal history category and offense level, that requests is directed to this Court's discretion under United States v. Booker, 543 U.S. 220 (2005).

(age of prior conviction); United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001)(relatively short sentence); United States v. Senior, 935 F.2d 149, 151 (8th Cir. 1991)(same); Reyes, 8 F.3d 1379 (small time nature of conviction); Beckham, 985 F.2d at 481 (small time nature of conviction); Smith, 909 F.2d at 1169 (same).  See also U.S.S.G., § 4A1.3 (citing prostitution and petty theft as offenses that might support a downward departure for overstatement of the criminal history score).

A further comment on the career offender enhancement is appropriate.  In November 2004, the Sentencing Commission issued a report entitled Fifteen Years of Guidelines Sentencing. http://www.ussc.gov/15_year/15year.htm.  One area of the study focused on the racial impact of the career offender guideline.  In the study the Commission states that "although Black offenders constituted just 26 percent of the offenders sentenced under the guidelines in 2000, they were 58 percent of the offenders subject to the severe penalties required by the career offender guideline.  Most of these offenders were subject to the guideline because of the inclusion of drug trafficking crimes in the criteria qualifying offenders for the guideline."  Id. at 133.  The Commission goes on to note studies which have suggested that minorities have a higher risk of conviction for drug offenses because of the "relative ease of detecting and prosecuting offenses that take place in open-air drug markets, which are most often found in impoverished minority neighborhoods."  Id. at 134.  The Commission's analysis of recidivism rates for drug trafficking offenders sentenced as career offenders "shows that their rates are much lower than other offenders who are assigned to criminal history category VI," and more closely resemble the rates for offenders in the lower criminal history categories in which they would be placed without application of the career offender provision.  Id.

Mr. Rogers has two prior controlled substances convictions as that term is defined by the career offender enhancement.  In case number 619 of 1996, as detailed in ¶ 34 of the PSR, Mr.

3

Rogers made two sales of 5.4 grams and 3.1 grams of crack cocaine respectively to an undercover police officer in the 300 block of West 18th Street in Erie. Mr. Rogers received a sentence of one to four years of imprisonment. In case number 2302 of 1996, as detailed in ¶ 35 of the PSR, Mr. Rogers conspired with others to deliver crack cocaine to crack purchasers in an open-air drug market in Erie. As detailed in the PSR, this offense involved Mr. Rogers, at the direction of others, delivering crack cocaine to individuals on the street in front of the residence at 322 West 18th Street. None of the crack cocaine was ever recovered; however, from the description of the street-level sales that were occurring the amounts were most likely very small rocks of cocaine being sold to drug addicts intent on smoking the rocks. Mr. Rogers received a sentence of six months to one year of imprisonment on this offense.

Mr. Rogers' prior drug convictions involved very small amounts of crack cocaine and reveal him to be a street level dealer. The first conviction involved a total of 8.5 grams of crack cocaine. No crack cocaine was recovered in the second case. Given the fact that both convictions involved sales in the 300 block of West 18th Street, the logic inference is that the amounts were similar in both cases. With that assumption, the total amount of crack cocaine Mr. Rogers has been convicted of selling would be in the range of 11.6 to 13.9 grams of crack cocaine. And, in the transaction in the second case, Mr. Rogers was working for a larger dealer who was using Mr. Rogers as a runner to deliver the crack. In the federal case Mr. Rogers delivered 6.7 grams of crack cocaine to his half-brother. Thus, in all three drug cases combined, Mr. Rogers has been found guilty of delivering approximately 18.3 grams to 20.6 grams of crack cocaine. It seems superfluous to point out that this is a tiny amount of drugs to justify a fifteen and a half to twenty year sentence.

These convictions also fit squarely into the Sentencing Commission's explanation of why

the career offender enhancement disproportionately impacts minorities.  Mr. Rogers was engaging in street-level dealing of crack cocaine in an open-air market which led to his arrests.  As the Sentencing Commission notes, these open-air markets exist in poor, minority dominated urban settings.  As a result, a disproportionately large number of poor blacks are arrested for minor drug offenses, and end up being disproportionately sentenced as career offenders.  This fact, documented by the Sentencing Commission itself, plays havoc with the guidelines' goal of consistency in sentencing and eliminating sentencing disparities based on race.  Through the law of unintended consequences, the guidelines have actually exacerbated sentencing disparities based on race.

Additionally, Mr. Rogers's simple assault conviction qualifies as a "crime of violence" for career offender purposes only because of the peculiar way in which Pennsylvania classifies simple assault.  While simple assault is a misdemeanor under Pennsylvania law, it is punishable by up to two years in jail and, therefore, qualifies as a felony for purposes of U.S.S.G. 4B1.2.  This is different than simple assault convictions in almost every state in the country.  Indeed, at least twenty-two states provide that simple assault, or an equivalent offense, cannot be punished more than one year.  See Ala. Code §§ 13A-6-22, 13A-5-7; Alaska Stat. §§ 11.41.230, 12.55.135; Ark. Code Ann. §§ 5-13-203, 5-4-401; Conn. Gen. Stat. §§ 53a-61, 53a-26; Del. Code Ann. Tit. 11 §§ 611, 4206; Fla. Stat. § 784.011, 784.03, 775.082; Ga. Code. Ann. §§ 16-5-23, 17-10-3; Haw. Rev. Stat. §§ 707-712, 701-107; 730 Ill. Comp. Stat. 12-1, 5/5-8-3; Ky. Rev. Stat. Ann. §§ 508-030, 532.090; Minn. Stat. § 609.224; Neb. Rev. Stat. §§ 28-310, 28-106; N.H. Rev. Stat. Ann. §§ 631:2-a; 651:2; N.Y. Penal Law §§ 120.00, 10.00; Or. Rev. Stat. §§ 163.160, 161.615; R.I. Gen. Laws § 11-5-3; S.D. Codified Laws §§ 22-18-1, 22-6-2; Tex. Penal Code Ann. §§ 22.01, 12.21; Vt. Stat. Ann. tit. 13, § 1023; Va. Code Ann. § 18.2-9, 18.2-11; Wash. Rev. Code § 9A.36.041; W. Va. Code § 61-2-9.

Wisconsin provides that simple assault cannot be punished with sentences exceeding nine months. See Wis. Stat. §§ 940.19, 939.51. And, at least an additional eighteen states provide that simple assault cannot be punished by more than six months imprisonment. See Cal. Penal Code §§ 242, 243; Idaho Code §§ 18-901, 18-903-04; Ind. Code §§35-42-2-1, 35-50-3-3; Iowa Code §§ 708.1, 903.1; Kan. Stat. Ann. §§ 21-3412, 21-4502; La. Rev. Stat. Ann. § 14:35; Mich. Comp. Laws § 750.81; Mo. Rev. Stat. §§ 565.070, 558.011; Mont. Code Ann. §45-5-201; Nev. Rev. Stat. 200.481, 193.150; N.M. Stat. Ann. §§ 30-3-4, 30-1-6; N.D. Cent. Code §§ 12.1-17-01.1, 12.1-32-01; Ohio Rev. Code Ann. §§ 2903.13, 2929.24; Okla Stat. tit. 21 §644; State v. Fennell, 340 S.C. 266 n.1 (2000) (noting that simple assault and battery is a misdemeanor in South Carolina, punishable by not more than thirty days imprisonment); Tenn. Code Ann. §§ 39-13-101, 40-35-111; Utah Code Ann. §§ 76-5-102; 76-3-204; Wyo. Stat. Ann. § 6-2-501.

     A central purpose behind the federal sentencing uidelines and their policy statements is to avoid unwarranted disparity between sentences for like situated defendants who have committed identical conduct. See, e.g., 18 U.S.C. § 3553(a)("The court, in determining the particular sentence to be imposed, shall consider . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"); U.S.S.G. Ch. 1 Pt. A. 3 (2002)(Two of the three objectives of the Sentencing Reform Act are "reasonable uniformity in sentencing in narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders" and "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity."); United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, (Nov. 2004).

Reliance on state oddities as determinative undermines this essential function of not just the federal guidelines but federal sentencing as a whole.

Mr. Rogers' simple assault conviction technically meets the definition of a crime of violence because of Pennsylvania's unique penalty system. 18 Pa.C.S. § 2701(simple assault); 18 Pa.C.S. § 1104 (authorized sentences for misdemeanors). But to categorize this conviction as a crime of violence based on this state peculiarity, rather than focusing on the fact that simple assault has traditionally been a misdemeanor with a maximum punishment of one year of imprisonment and is treated as such in almost every other jurisdiction in the country, including every other jurisdiction in the Third Circuit, is contrary to an essential purpose of the guidelines.

If Mr. Rogers was in New Jersey and committed the exact same conduct and was convicted of the same offense, he would not have a prior conviction for a crime of violence. If he was in Delaware, that would be the same situation. If he was in New York, it would be the same situation. If he was in Ohio, it would be the same situation. Due to Pennsylvania's peculiar treatment of simple assault offenses, Mr. Rogers is treated the same as a person who has a murder, rape, or burglary conviction. All of this simply because Pennsylvania does not follow the common law distinction between a misdemeanor and felony.

Since a central goal of the guidelines is to create uniformity across state lines so that similarly situated people in different parts of the country will receive similar sentences, this Court should exercise its discretion and recognize that using Mr. Rogers' simple assault conviction as a crime of violence to support the career offender enhancement overstates the seriousness of his criminal history See United States v. Perez-Nunez, 368 F.Supp.2d 1265 (N.M. April 28, 2005) (sentencing defendant to 24 months, even though the guideline range was 57-71 months, where defendant's prior offense

would not have been classified as a felony in most other states).

Title 18, § 3553, which provides the Court with its sentencing authority states that "The court shall impose a sentence sufficient, **but not greater than necessary,**" "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . ." (Emphasis supplied).  It surely is not the case that a sentence in excess of fifteen years reflects the seriousness of distributing 6.7 grams of crack cocaine.  Without the career offender enhancement, Mr. Rogers' advisory guideline imprisonment range would be 84-105 months.  A sentence within that range would be more than sufficient to reflect the seriousness of Mr. Rogers' offense.

Although such a grossly disproportionate sentence may deter others, such a lengthy sentence is not necessary to provide the **adequate** deterrence called for by the statute.  Such an enormous sentence will not provide Mr. Rogers with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, as required by § 3553.  To the contrary, the sentence will cripple his ability to provide for himself lawfully upon his release.

Federal courts have recognized that a downward departure is appropriate when the guideline sentence is longer than reasonably necessary to satisfy the goals of 18 U.S.C. § 3553(a).  United States v. Redemann, 295 F. Supp.2d 887, 895 (E.D. Wisc. 2003)("Courts have long recognized that where the sentence called for by the guidelines would result in punishment greater than necessary the court can depart downward"); United States v. Gaind, 829 F. Supp. 669, 670 (S.D.N.Y. 1993)(holding that a downward departure was appropriate because "the destruction of the

defendant's business has already achieved to a significant extent some although not all of the objectives otherwise required to be sought through the sentencing process . . . Under such circumstances 18 U.S.C. § 3553(a) controls through the requirement that the "court shall impose a sentence sufficient, but not greater than necessary" to the defined objective, and ¶ 3553(b) requires me to depart downward").

The Third Circuit has also stated, more generally, that the Court has the authority to ameliorate a guideline sentence that does not meet the criteria of § 3553. "It is important too, to realize that departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves. District Judges, therefore, need not shrink from utilizing departures when the opportunity presents itself and when circumstances require such action to bring about a fair and reasonable sentence." United States v. Gaskill, 991 F.2d 82, 86 (3d Cir. 1993). Moreover, the Guidelines "do not require a judge to leave compassion and common sense at the door to courtroom." United States v. Dominquez, 296 F.3d 192, 196, n. 7 (3d Cir. 2002)(quoting United States v. Johnson, 964 F.2d 124, 125 (2d Cir. 1992).

Mr. Rogers certainly must be punished for his crime. A sentence within the non-enhanced guideline imprisonment range of 84-105 months is sufficient, but not greater than necessary for that punishment to meet the goals of sentencing as set forth by Congress.

WHEREFORE, defendant, Yakeen Rogers, respectfully requests that this Honorable Court depart downward due to the guideline imprisonment range overstating the seriousness of his criminal history.

        Respectfully submitted,

        <u>/s/ Thomas W. Patton</u>
        Thomas W. Patton
        Assistant Federal Public Defender
        PA I.D. No. 88653