IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 04-52 Erie |
| | ) | |
| YAKEEN ROGERS | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**POSITION WITH RESPECT TO SENTENCING FACTORS**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Marshall J. Piccinini, Assistant United States Attorney for said district, and states as follows:

**I.    INTRODUCTION**

On March 9, 2006, the defendant, Yakeen Rogers, pled guilty to a one-count indictment charging him with possession with intent to distribute and distribution of 5 or more grams of cocaine base. In preparation for Rogers' June 12, 2006 sentencing, the United States Probation and Pretrial Services Office prepared a Presentence Investigation Report (PSR), wherein Rogers' total offense level was calculated as 31 and his criminal history category as VI, after application of the career offender enhancement. (PSR ¶28-30, 40). In response, Rogers filed his Position with Respect to Sentencing Factors seeking a downward departure on the basis that the career offender enhancement significantly overstates the seriousness of Rogers' criminal

history.  As set forth below, it is the Government's position that Rogers' criminal history accurately portrays the seriousness of his prior criminal conduct and demonstrates that it is likely Rogers will commit future crimes.

## II.  **FACTS**

Rogers' foray into the criminal justice system began at age 13, when he pushed a juvenile female onto a bed, attempted to kiss her, attempted to remove her pants, and fondled her genital area.  Seven months later, while still 13 years of age, Rogers and his sister followed a ten-year-old girl into an alley, and Rogers forcibly removed money from the girl's pants pocket.  These incidents resulted in Rogers being adjudicated delinquent, on November 16, 1989, on allegations of indecent assault, robbery, and criminal conspiracy.  Rogers was placed on juvenile court-imposed probation, during which two more allegations were filed against Rogers.  The first allegation of robbery related to Rogers forcibly removing a Timex watch from a victim - this petition was withdrawn.  The second allegation of failure to comply with a lawful sentence related to Rogers' failure to pay fines and costs imposed after his conviction on a summary offense of retail theft - the disposition of this offense is unavailable.  Rogers was discharged from probation on April 25, 1991.

Six weeks later, allegations of robbery and simple assault were filed against Rogers in juvenile court.  Rogers, now

age 15, had approached a man and asked for cigarettes.  When the man refused to comply, Rogers placed him in a headlock and slammed him to the ground, causing the man to suffer injuries that required medical treatment.  Rogers was adjudicated delinquent on October 29, 1991, and although ordered placed at Glen Mills School, his placement was deferred and he was placed on intensive probation.  Rogers was discharged from probation on February 28, 1995.

One year later, Rogers, who was then age 20, was arrested and charged with criminal conspiracy and two counts of delivery of a controlled substance.  Although charged at one docket, these offenses involved two separate instances where the defendant sold 5.4 grams and 3.1 grams of crack cocaine to an undercover officer.  On November 15, 1996, Rogers pled to all three charges and was subsequently sentenced to one to four years of imprisonment.  He was paroled on November 16, 1998, but he violated the conditions of his parole by assaulting his girlfriend and was therefore recommitted on July 21, 1999, to serve six months of back time.  Rogers was re-paroled on November 18, 1999, and by February 5, 2000, he was arrested again and charged with simple assault (discussed more fully below).  As a result, he was recommitted to prison to serve fifteen months of back time and maxed out the remainder of his sentence in prison.

After his arrest, but prior to his conviction and sentence on the previous drug charges, Rogers was arrested and

charged with possession of a controlled substance, delivery of a controlled substance, loitering in aid of a drug offense, two counts of criminal conspiracy, and driving without a license. The underlying facts of these charges are that Rogers conspired with two co-defendants to deliver crack cocaine to three different individuals at three different times on the same day. On December 6, 1996, Rogers pled no contest to one count of conspiracy to deliver crack cocaine and was sentenced to six months to one year of incarceration consecutive to his prior drug sentence.

At age 24, Rogers was arrested for simple assault, as mentioned previously, in addition to criminal conspiracy, robbery and theft by unlawful taking, while he was on parole from his first drug sentence. Rogers punched the victim in the face after which his codefendant took jewelry from the victim's neck. Rogers was found guilty of simple assault after a jury trial and sentenced to one to two years of imprisonment. He was paroled on July 28, 2003.

On June 22, 2004, Rogers committed the instant offense, his conviction for which has triggered application of the career offender guideline currently at issue.

**III.  ARGUMENT**

Rogers does not dispute that his two prior convictions for narcotics violations and his prior conviction for simple assault all qualify as crimes which render him a career offender

4

under the guidelines.[1]  Rather, Rogers requests a downward departure arguing that application of the career offender guideline seriously over-represents his criminal history.  Rogers argues that his two prior drug convictions were for what he deems "very small amounts of crack cocaine".  (Def. Brf. p. 4).  He also argues that his conviction for simple assault qualifies as a crime of violence for career offender purposes only because of "the peculiar way in which Pennsylvania classifies simple assault."  (Def. Brf. p. 5). For these reasons, Rogers asserts that classifying him as a career offender significantly over-represents his prior criminal history. However, as discussed below, all of these arguments are without merit.

### A. Quantity of Drugs as a Basis for Downward Departure

Rogers argues that his two prior drug convictions which qualify him as a career offender overstate his criminal history because these convictions involved what he considers to be very small amounts of crack cocaine.  He further argues that his situation is demonstrative of how the career offender guideline is disproportionately applied to minorities such as himself.

Although the Guidelines recognize a downward departure where a defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history and

---

[1] Although Rogers has three prior convictions which qualify him as a career offender, only two of them are necessary for application of the career offender guideline.  U.S.S.G. §4B1.1.

the likelihood that the defendant will commit other crimes, the Third Circuit has emphasized that such a departure is only justified in cases where a defendant's criminal history category "*significantly* over-represents" the seriousness of the defendant's past conduct and future threat to society.  United States v. Shoupe, 988 F.2d 440, 447 (3rd Cir. 1993) (emphasis in original). Rogers' offense level and criminal history category, after application of the career offender guideline, do not *significantly* over-represent the seriousness of his longstanding criminal history or the likelihood that he will commit future crimes.

Indeed, as outlined above, Rogers' first encounter with the criminal justice system was when he was only thirteen years of age, and he continually committed criminal offenses while he was a juvenile for which he was adjudicated delinquent.  As an adult, Rogers sustained two convictions for offenses involving his delivery of crack cocaine.  Significantly, although his first conviction involved two separate instances whereby Rogers delivered crack cocaine, he was only charged at one docket, when he could have been charged at two separate dockets creating two qualifying convictions in and of themselves. While these charges were pending, Rogers was arrested for delivering crack cocaine at three different times in one day, resulting in his second narcotics conviction. Within three months of being re-paroled from his consecutive sentences on the above drug convictions, Rogers was arrested and

later convicted of simple assault.

Rogers' criminal history shows that he has been a career criminal since age thirteen.  He has repeatedly and consistently engaged in illegal conduct consisting of drug dealing and violent behavior.  Moreover, Rogers has committed a number of offenses while subject to either probation or parole supervision or while criminal charges against him are pending, all of which clearly demonstrate that he has no respect for nor intention to obey the law.  Rather than overstating his conduct, Rogers' criminal history paints a clear picture of his likelihood for recidivism.  Rogers has been given several chances for rehabilitation, but has failed to take advantage of any opportunity that has been provided to him.  The Government submits that it is time to hold Rogers accountable for his criminal conduct.

Rogers, however, asks this Court to focus on the quantities of crack cocaine involved in his prior and current narcotics convictions, and find that his criminal history is overstated because of the "small amount" of crack cocaine involved.  In support of his argument, Rogers cites to cases which have upheld a sentencing court's decision to depart downward when the defendant's criminal history consisted of offenses that were "old, relatively 'small time,' and/or the defendant received relatively short sentences."  (Def. Brf., p. 2-3).  While such a departure may have been appropriate in those cases, it is not appropriate here.

7

In fact, a number of courts have refused to accept the quantity of drugs as a basis for departing downward.

For instance, in United States v. Caldwell, 219 F.3d 1186 (10th Cir. 2000), the defendant had two prior convictions for cocaine trafficking and one conviction for armed robbery that qualified him as a career offender.  The defendant argued, and the district court agreed, that the defendant was entitled to a downward departure based on the relatively small quantities of drugs involved in the defendant's instant offense and prior drug trafficking convictions.  The Tenth Circuit, however, reversed, stating that it had never endorsed the proposition that a small quantity of drugs involved in current or prior criminal offenses alone could justify a downward departure.  Caldwell, 219 F.3d at 1193 (citation omitted).  The court further noted that allowing individual district judges to decide what amount of drugs is small would undermine the consistency goal of the Guidelines.  Id. at 1194 (citation omitted).  See also, United States v. Rucker, 171 F.3d 1359 (11th Cir. 1999) (circuit court reversed downward departure where district court's stated basis for departure was that defendant's prior crimes involved small amounts of drugs); United States v. Tejeda, 146 F.3d 84 (2d Cir. 1998) (holding that a small amount of drugs is not a basis for a downward departure under the career offender guideline); United States v. Brown, 23 F.3d 839 (4th Cir. 1994) (holding that the Guidelines adequately

take into consideration drug quantities and therefore court could not depart downward from career offender sentence on basis that prior state conviction involved only a small quantity of drugs).

Accordingly, the Government submits that this Court should not downward depart as Rogers' offense level and criminal history score accurately depict the seriousness of his criminal history despite any allegations as to the amount of drugs involved in those offenses.

Rogers, nevertheless, ties his quantitative argument into his claim that the career offender enhancement disproportionately impacts minorities, such as himself. In support of his claim, he cites to a report issued by the Sentencing Commission in 2004. See Fifteen Years of Guidelines Sentencing, (November 2004) *available at* www.ussc.gov/15_year/15year.htm.. The report notes that some commentators have suggested that African-Americans have a higher risk of conviction for drug trafficking because their criminal behavior often occurs in open-air drug markets in impoverished minority neighborhoods. Fifteen Years of Guidelines Sentencing, at 134. Rogers argues that his drug dealing fits squarely into this description and suggests that this Court should depart downward in order to keep with the Guidelines' goal of consistency and eliminating sentencing disparities on the basis of race. (Def. Brf., p. 4-5).

However, Rogers argument is not supported by the very

9

authority to which he cites in support of it. Indeed, the report concludes that "any influence of racial or ethnic discrimination in sentencing decisions has been substantially controlled." <u>Fifteen Years of Guidelines Sentencing</u>, at 141. Furthermore, the Government notes that since the publication of this report in 2004, the Sentencing Commission has not seen the need to make any changes to the career offender guideline in order to remedy what the defendant argues is its disproportionate application. For these reasons, the Government submits that this Court should deny the defendant's request for a downward departure.

    C.    **Simple Assault as a Basis for Downward Departure**.

In addition, Rogers argues that his simple assault conviction qualifies as a crime of violence for purposes of applying the career offender guideline "only because of the peculiar way in which Pennsylvania classifies simple assault." (Def. Brf. p. 5-7). He further argues that in order to avoid unwarranted disparity between sentences for similarly situated defendants, this Court should depart downward because if Rogers had committed the crime of simple assault in one of 22 other states, his conviction would not qualify as a crime of violence because under those states' sentencing structures, the crime is not punishable by more than a year.

First, it should be noted that even if Rogers' simple assault conviction were not recognized as a crime of violence, the

10

career offender enhancement would still apply to him because of his two prior felony drug convictions. The requirements for the career offender guideline are as follows:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). Rogers does not dispute that either of his prior drug convictions qualify under this guideline. Thus, even if simple assault were punishable by less than one year in Pennsylvania, Rogers would still be a career offender based on his prior two felony drug convictions. Therefore, arguing that this Court should depart downward to avoid sentencing disparity where career offenders have a qualifying conviction for simple assault is without merit.

Even so, it is binding Third Circuit precedent that the Pennsylvania offense of simple assault is a felony conviction of a crime of violence as defined by the Sentencing Guidelines. United States v. Dorsey, 174 F.3d 331 (3d Cir. 1999), cert. denied, 528 U.S. 885 (1999). Moreover, the United States Supreme Court has held that in determining whether an offense is a crime of violence, a trial court is required to look only to the fact of conviction and the statutory definition of the prior offense, and not to the

11

facts underlying the conviction. Taylor v. United States, 495 U.S. 575, 602 (1990). The Third Circuit has acted in accord with Taylor in finding that simple assault is a qualifying predicate offense, and this finding should not be circumvented by a downward departure from the career offender guideline. When considering whether Rogers' criminal history category over represents the seriousness of his criminal history, this court's focus should not be on Pennsylvania's statutory classification of the crime of simple assault, rather, its focus should be on Rogers' entire criminal history, including the fact that has previously been convicted of a violent crime and two prior felony drug convictions.

**IV.    CONCLUSION**

WHEREFORE, the Government respectfully requests this Court to deny the defendant's request for a downward departure.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


 /s/ Marshall J. Piccinini
MARSHALL J. PICCININI
Assistant U.S. Attorney
PA ID No. 56362