IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                     CRIMINAL NO. 04-52 ERIE

YAKEEN ROGERS

CHANGE OF PLEA

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Courtroom C, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, March 9, 2006.

APPEARANCES:
        MARSHALL J. PICCININI, Assistant United States
        Attorney, appearing on behalf of the Government.

        THOMAS W. PATTON, Assistant Federal Public

Defender, appearing on behalf of the Defendant.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the Change of Plea proceedings began at

4    10:00 a.m., on Thursday, March 9, 2006, in Courtroom C.)

5

6          THE COURT:  Mr. Rogers, I'm informed that you wish

7    to change the plea you have previously entered at Count One of

8    Indictment No. 04-52 Erie to a plea of guilty, is that correct,

9    sir?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Before accepting your guilty plea, there

12    are a number of questions that I'm going to ask you to make

13    certain it is a valid plea.  If you do not understand any

14  question, please tell me and I will give you the time to

15  consult with Mr. Patton.  I give you these instructions because

16  it is essential to a valid plea that you understand every

17  question before you answer.  Would you please administer the

18  oath.

19          DEPUTY CLERK:  Please raise your right hand.

20          (Whereupon, the Defendant, YAKEEN ROGERS, was

21  sworn.)

22          THE COURT:  Do you understand that now that you have

23  been sworn, your answers to my questions are subject to the

24  penalties of perjury or of making a false statement if you do

25  not answer truthfully?


                            3


1           THE DEFENDANT:  Yes.

2           THE COURT:  Would you please tell me your full name?

3           THE DEFENDANT:  Yakeen Rogers.

4           THE COURT:  How old are you, sir?

5           THE DEFENDANT:  Thirty.

6           THE COURT:  How far did you go in school?

7           THE DEFENDANT:  11th grade.

8      THE COURT:  Are you able to communicate in English?

9      THE DEFENDANT:  Yes.

10     THE COURT:  Can he do so, Mr. Patton?

11     MR. PATTON:  Yes, sir.

12     THE COURT:  Have you taken any drugs or medication

13  or have you drunk any alcoholic beverages in the past 24 hours?

14     THE DEFENDANT:  No.

15     THE COURT:  Are you now or have you recently been

16  under the care of a physician or a psychiatrist?

17     THE DEFENDANT:  No.

18     THE COURT:  Are you now or have you recently been

19  hospitalized or treated for any type of narcotic addiction?

20     THE DEFENDANT:  No.

21     THE COURT:  Do you understand what's happening here

22  today?

23     THE DEFENDANT:  Yes.

24     THE COURT:  Does either counsel have any doubt about

25  the competence of this defendant to plead guilty at this time

4

1  to the charge contained in the Indictment; Mr. Piccinini?

2          MR. PICCININI:  No, your Honor.

3          THE COURT:  Mr. Patton?

4          MR. PATTON:  No, sir.

5          THE COURT:  I find this defendant is competent to

6   plead.  Do have you a lawyer with you here today?

7          THE DEFENDANT:  Yes.

8          THE COURT:  What's his name?

9          THE DEFENDANT:  Tom Patton.

10          THE COURT:  Have you had a sufficient opportunity to

11   discuss your case with him?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you happy that the work Mr. Patton

14   has done for you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that if you continue

17   to plead not guilty and do not change your plea, you would have

18   the right to be assisted by an attorney at the trial of the

19   charge against you?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that if you did not

22   enter a guilty plea and that if you qualified financially, you

23   would be entitled to be assisted by an attorney at no cost to

24  you at every phase of the processing of these charges against

25  you?

5

1       THE DEFENDANT:  Yes.

2       THE COURT:  And do you understand that if you did

3  not plead guilty and if there were a trial, under the

4  Constitution and the laws of the United States, you would be

5  entitled to a speedy trial by a judge and jury on the charge?

6       THE DEFENDANT:  Yes.

7       THE COURT:  Do you understand that if there were a

8  trial, you would be presumed to be innocent at the trial of the

9  charge against you?

10      THE DEFENDANT:  Yes.

11      THE COURT:  And do you understand that if there were

12  a trial, the government would be required to prove your guilt

13  by competent evidence and beyond a reasonable doubt before you

14  could be found to be guilty?

15      THE DEFENDANT:  Yes.

16      THE COURT:  Do you understand that if there were a

17  trial, you would not have to prove that you were innocent?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that if there were a

20   trial, the jury would have to be unanimous in order to find you

21   guilty of the charge?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that if there were a

24   trial, you would have the right to participate in the selection

25   of the jury; that you would have the right to strike or


                                    6


1    eliminate any prospective juror if it was demonstrated that the

2    juror would be unable to render a fair and impartial verdict;

3    and that you would have the right to strike or eliminate ten

4    jurors from the jury, and one alternate, without giving any

5    reason at all for so doing?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that if there were a

8    trial, the witnesses for the government would have to come to

9    court and they would have to testify in your presence?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And do you understand that if there were

12  a trial, your counsel could cross-examine the witnesses for the

13  government, object to evidence offered by the government and

14  then offer evidence on your behalf?

15        THE DEFENDANT:  Yes.

16        THE COURT:  Do you understand that if there were a

17  trial, the government would have to pay witness fees to

18  witnesses you wished to call on your behalf, if you qualified

19  as being financially unable to do so?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you understand that if there were a

22  trial, you would have the right to testify if you chose to?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Do you understand that if there were a

25  trial, you would have the right not to testify and that no

7

1  inference or suggestion of guilt could be drawn from the fact

2  that you did not testify?

3        THE DEFENDANT:  Yes.

4        THE COURT:  If you plead guilty and I accept your

5  plea, do you understand that you will waive your right to a

6   trial and the other rights which I have mentioned to you, that

7   there will be no trial, and I will enter a judgment of guilt

8   and sentence you on the basis of your guilty plea after

9   considering a presentence report?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If you plead guilty, do you understand

12   that you will also have to waive your right not to incriminate

13   yourself, because I will ask you questions about what you did

14   in order to satisfy myself that you are guilty as charged and

15   that you will have to acknowledge your guilt?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Now that I mentioned your rights to you,

18   do you still wish to plead guilty?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Have you received a copy of the

21   Indictment naming you, and have you discussed with your lawyer

22   the charge in the Indictment to which you intend to plead

23   guilty today?

24          THE DEFENDANT:  Yes, I have.

25          THE COURT:  Do you understand that you charged in

1  the Indictment as follows:

2      THE DEFENDANT:  Yes.

3      THE COURT:  Hang on a second.

4      THE DEFENDANT:  Excuse me, I'm sorry.

5      THE COURT:  "On or about June 22, 2004, in the

6  Western District of Pennsylvania, the defendant, Yakeen Rogers,

7  did knowingly, intentionally and unlawfully possess with intent

8  the distribute and distribute five grams or more of a mixture

9  and substance containing a detectable amount of cocaine base,

10  in the form commonly known as crack, a Schedule II controlled

11  substance.

12      In violation of Title 21, United States Code,

13  Sections 841(a)(1)," et seq.  Do you understand the charge?

14      THE DEFENDANT:  Yes.

15      THE COURT:  Do you understand that in order for the

16  crime of possession with intent to distribute and distribute

17  five grams or more of cocaine base, in violation of 21 U.S.C.

18  Sections 841(a)(1), et seq., to be established, the government

19  must prove all of the following essential elements beyond a

20  reasonable doubt:

21          That on or about the date set forth, the defendant

22   distributed or possessed with intent to distribute the

23   controlled substance charged in the Indictment.

24          That the defendant did so knowingly and

25   intentionally.


9


1          That cocaine base is a Schedule II controlled

2    substance pursuant to 21 U.S.C. Section 812(c), Schedule

3    II(a)(4).

4          That the mixture or substance containing a

5    detectable amount of cocaine base was five grams or more.

6          Do you understand the elements of the crime?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that the maximum

9    penalty which you would be facing is a term of imprisonment of

10   not less than five years to a maximum of 40 years.

11          A fine not to exceed $2 million.

12          A term of supervised release of at least four years.

13          For a second or subsequent felony drug conviction

14   that is final, whether federal, state or foreign:

15        A term of imprisonment of not less than 10 years to

16  a maximum of life.

17        A fine not to exceed $4 million.

18        A term of supervised release of at least eight

19  years.

20        As well as a mandatory special assessment of $100.

21        Do you understand the maximum penalties that are in

22  play here?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Has anybody made any threat to you or to

25  anyone else that has forced you in any way to plead guilty


                                    10


1  today?

2        THE DEFENDANT:  No.

3        THE COURT:  Has there been a plea agreement, Mr.

4  Piccinini?

5        MR. PICCININI:  There has not, your Honor.

6        THE COURT:  Okay.  Do you understand that the

7  offense to which you are pleading guilty today is a felony

8  offense; that if your plea is accepted you will be adjudged

9   guilty of that offense and that such adjudication may deprive

10  you of valuable civil rights, such as the right to vote, hold

11  public office, serve on a jury or possess any type of firearm;

12  do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Under the Sentencing Reform Act of 1984,

15  the United States Sentencing Commission has issued guidelines

16  for judges to follow in determining sentences in criminal cases

17  for offenses occurring after November 1, 1987.  Have you and

18  Mr. Patton talked about how the guidelines might apply to your

19  case and the fact that the guidelines are now advisory by

20  virtue of Supreme Court decisions?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that I will not be

23  able to determine the advisory guideline sentence for your case

24  until after the presentence report has been completed and you

25  and the government have had an opportunity to challenge the

11

1   facts that were reported by the probation officer?

2           THE DEFENDANT:  Yes.

3          THE COURT:  Do you understand that after it has been

4   determined what sentence applies to a case, the judge has the

5   authority in some circumstances to impose a sentence that is

6   more severe or less severe than that called for by the

7   guidelines?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And do you understand that under certain

10  circumstances you or the government may have the right to

11  appeal any sentence which I impose?

12         THE DEFENDANT:  Yes.

13         THE COURT:  And do you understand that parole has

14  been abolished and that if you are sentenced to a term of

15  imprisonment, you will not be released on parole?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that if the sentence

18  is more severe than you expected it to be, you will still be

19  bound by your guilty plea and you will have no right to

20  withdraw it?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Except for your discussions with Mr.

23  Patton about the Sentencing Guidelines, has anybody made any

24  prediction or promise to you about what your sentence is going

25  to be?


12


1       THE DEFENDANT:  No.

2       THE COURT:  Has anything I have said here today

3  suggested to you what your actual sentence will be?

4       THE DEFENDANT:  No.

5       THE COURT:  Have you been instructed by your

6  counsel, by government counsel, or by anybody else to respond

7  untruthfully to any question about a promised sentence?

8       THE DEFENDANT:  No.

9       THE COURT:  Did you, as charged in Count One and as

10  previously read to you by me, commit the offense as charged?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Mr. Piccinini, what would be the

13  government's proof in this case?

14       MR. PICCININI:  Your Honor, if this matter proceeded

15  to trial, we would provide testimony from Trooper Jeff Tylman,

16  as well as other members of the EAGLE Task Force, that would

17  establish on June 22, 2004, a cooperating confidential

18  informant, who was in a position to purchase crack cocaine from

19  the defendant, placed a consensually recorded telephone

20  conversation and set up an initial deal with the defendant,

21  where they were going to meet and get together at the 800 block

22  of Wayne Street, which was the residence of one of the

23  defendant's girlfriends.  At that time the confidential

24  informant, both his vehicle and his person was searched for

25  contraband.  A body recorder was placed on him, and he was

13

1  provided with $500 of recorded government funds.

2         The CI then met directly with the defendant, Mr.

3  Rogers, discussed how much Mr. Rogers would want for a quarter,

4  which was a reference to a quarter ounce of crack cocaine.  Mr.

5  Rogers responded that he wanted $250.  The two of them traveled

6  together to the vicinity of the Golden Goose Tavern at 22nd and

7  Ash Street.  Then walked to the residence in the 700 block of

8  East 23rd, which is the defendant's residence.  Returned to the

9  vehicle, at which time the confidential informant returned to

10  the law enforcement officers and provided to us a quantity of

11  crack cocaine.  And the remainder of the $500 that was provided

12  to him, he gave us back the $250 that was left.

13          The quantity of the controlled substance was sent to

14    the Pennsylvania State Police Crime Laboratory, and

15    Pennsylvania State Police Forensic Scientist David Edinger

16    weighed and examined the evidence and found it to contain 6.7

17    grams of cocaine base.  And the testimony would show that it

18    was in the form commonly known as crack cocaine.

19          On October 5th and October 14th, 2004, EAGLE Task

20    Force members approached Mr. Rogers and discussed with him and

21    confronted him with the consensually recorded conversations.

22    During the course of those two interviews, the sum and

23    substance of his statement was that he admitted that in fact

24    was the person, his voice was identified on those recorded

25    conversations, and he in fact sold the crack cocaine to the


                              14


1    confidential informant on that date.  That would be the nature

2    of the government's proof.

3          THE COURT:  All right.  Mr. Rogers, you just heard

4    what Mr. Piccinini has said by way of summary, do you agree

5    with what he said?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you still wish to plead guilty?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Mr. Patton, is it your advice that he do

10    so?

11          MR. PATTON:  Yes, sir.

12          THE COURT:  Mr. Rogers, because you acknowledge that

13    you are in fact guilty as charged and because you know about

14    your right to a trial, because you know what the maximum

15    possible penalty is, and because you are voluntarily pleading

16    guilty, I will accept your guilty plea and enter a judgment of

17    guilty on your plea to Count One of Indictment No. 04-52 Erie.

18          It is, therefore, the finding of the court in the

19    case of United States of America versus Yakeen Rogers that the

20    defendant is fully competent and capable of entering an

21    informed plea, and that his plea of guilty is a knowing and

22    voluntary plea supported by an independent basis in fact

23    containing each of the essential elements of the offense and

24    that, therefore, the plea is accepted and the defendant is now

25    adjudged guilty of the charge.

15

1          The record should reflect that counsel and the

2   client have executed the Change of Plea.

3          A presentence report is going to be prepared by the

4   probation officer, and it is in your best interests to

5   cooperate with the probation officer in furnishing information

6   for the report, because that report will be important in my

7   decision about what your sentence will be.  You and your

8   counsel will have the right and you'll have the opportunity to

9   examine that report before sentencing.

10         Disposition of sentencing in this case is set for

11    June 12, 2006, at 10 a.m., in this courtroom.

12

13         (Whereupon, at 10:15 a.m., the Change of Plea was

14   concluded.)

15

16                    - - -

17

18

19

20

21

22

23

24

25


16


1          C E R T I F I C A T E
          _ _ _ _ _ _ _ _ _ _

2

3

4

5    I, Ronald J. Bench, certify that the foregoing is a

6   correct transcript from the record of proceedings in the

7   above-entitled matter.

8

9

10

11

12   _____

13   Ronald J. Bench

14

15

file:///A|/ROGERPL.TXT

16

17

18

19

20

21

22

23

24

25